BCCTC ASSOCIATES, INC., BCCTC Associates VI, LLC, BCCTC Associates VI, L.P., Boston Capital Corporate Tax Credit Fund VI, L.P., C & M Management, Inc., BCA Associates L.P., Boston Capital Associates IV, L.P., Boston Capital Tax Credit Fund IV, L.P., and Boston Capital Partners, Inc., Plaintiffs

v.

SUMMERDALE/AAHFI, L.P., Summerdale/AAHFI, L.P. II, M. Vincent Murphy, III, and E. Donald Dressel, Defendants.

Civil Action No. 09–10908–WGY.

United States District Court, D. Massachusetts.

Sept. 12, 2009.

---

Sigmund J. Roos, Block & Roos, LLP, Boston, MA, for Plaintiffs.

William D. Chapman, Melick, Porter & Shea, LLP, Boston, MA, Stanley E. Kreimer, Johnson & Ward, Atlanta, GA, for Defendants.

## MEMORANDUM OF DECISION

YOUNG, District Judge.

## I. INTRODUCTION

In this action against Summerdale/AAHFI, L.P. ("Summerdale/AAHFI I"), Summerdale/AAHFI, L.P. II ("Summerdale/AAHFI II"; collectively the "Summerdale/AAHFI Defendants"), M. Vincent Murphy, III,("Murphy") and E. Donald Dressel, ("Dressel") (collectively the "Defendants"), the Plaintiffs, BCCTC Associates, Inc., BCCTC Associates VI, LLC, BCCTC Associates VI, L.P., Boston Capital Corporate Tax Credit Fund VI, L.P. ("Fund VI"), C & M Management, Inc., BCA Associates L.P., Boston Capital Associates IV, L.P., Boston Capital Tax Credit Fund IV, L.P. ("Fund IV"), and Boston Capital Partners, Inc. (collectively the "Plaintiffs"), allege breach of partnership agreements and demand payment pursuant to guaranty agreements.

## A. Procedural Posture

The Plaintiffs moved to remand this case to state court, [Doc. 9] ("Remand Mem."); the Defendants opposed. [Doc. 18] ("Re-

mand Opp."). The Defendants in turn moved to dismiss the case for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), or in the alternative, under the doctrine of "forum non conveniens," [Doc. 5] ("Dismiss Mem."); the Plaintiffs opposed. [Doc. 10] ("Dismiss Opp.").

## B. Jurisdictional Facts

The Plaintiffs, various Massachusetts entities, are investors in two Georgia limited partnerships, Summerdale Partners L.P. ("Summerdale I") and Summerdale Partners L.P. II ("Summerdale II"; collectively "Summerdale Partners"), which own an apartment complex in Georgia. Summerdale/AAHFI I is a general partner in Summerdale I. Summerdale/AAHFI II is a general partner in Summerdale II. The Plaintiffs allege that the Summerdale/AAHFI Defendants breached certain partnership agreements. They also allege that Murphy and Dressel, residents of Georgia, are guarantors for the Summerdale/AAHFI Defendants.

The Plaintiffs sought out the Defendants in Georgia for investment opportunities, though they conducted due diligence from Massachusetts. A number of interstate communications occurred with regard to Fund VI's investment in Summerdale I and BCCTC Fund X's ("Fund X")[1] investment in Summerdale II.

### 1. Investment in Summerdale I

Scott Arrighi ("Arrighi"), Boston Capital's Vice President of Acquisitions, states in his affidavit ("Arrighi Aff.") that there have been written communications between Dressel and a former employee of Boston Capital, Raul Moore ("Moore"), which were sent into Massachusetts. Arrighi Aff. ¶¶ 14–15 [Doc 11. Ex. E].

---

**1.** Fund X later assigned the contract to Fund IV which is now a plaintiff.

These communications occurred in July, August, and September of 1996 and relate to negotiations over the terms of Fund VI's investment in Summerdale I. Fund VI's investment agreement with Summerdale/AAHFI I was executed on July 3, 1997. Compl. ¶ 19. Arrighi asserts that these communications reflect the position of the Defendants because they include a memorandum addressed to Dressel from Alison Drummond ("Drummond") who was counsel for Dressel, Murphy and the Summerdale/AAHFI Defendants. Arrighi Aff. ¶ 15.

### 2. Syndication Agreement

Arrighi states that he was directly involved in the due diligence and negotiation of the syndication agreement which outlined the general terms of Fund X's proposed investment in Summerdale II, Arrighi Aff. ¶¶ 9, 11, including receiving a memorandum from Dressel proposing changes to the agreement. *Id.* ¶ 10 [Doc. 11, Ex. B]. On October 10, 1997, Arrighi executed the syndication agreement in Boston. *Id.* ¶ 12.

### 3. Investment in Summerdale II

Arrighi states that after executing the syndication agreement he had a number of communications in Massachusetts regarding the proposed changes in Summerdale II's Partnership Agreement. Arrighi Aff. ¶ 13. He had at least six telephone conversations with Dressel, most of which were initiated by Dressel and related to the negotiation of the Summerdale II's Partnership Agreement. *Id.* ¶ 12. Arrighi alleges that some of the conversations included Drummond. *Id.* Arrighi understood that during their communications in the spring, summer, and fall of 1997, Dressel was representing himself, Murphy, and the Summerdale/AAHFI Defendants. *Id.* ¶ 6.

### 4. Post–Agreement Contacts

During the eleven years of the relationship, many communications regarding the investments in the Summerdale Partners were sent to Boston. As required by the syndication agreement, the Summerdale/AAHFI Defendants submitted certain documents to Fund IV and Fund VI as a condition of their capital investments. The Summerdale/AAHFI Defendants also sent various annual reports into Massachusetts. Dismissal Opp. at 7–8.

### C. Federal Jurisdiction

Federal Jurisdiction is alleged under 28 U.S.C. § 1332. The Defendants, however, assert that the Court lacks personal jurisdiction.

## II. ANALYSIS

### A. The Plaintiffs' motion to remand

■ The Plaintiffs moved pursuant to 28 U.S.C. § 1447(c) to remand the case to the Massachusetts Superior Court. They claim that the Defendants' notice of removal was untimely.

In this case, service of the complaint by certified mail was completed upon Dressel on April 12, 2009, and on the Summerdale/AAHFI Defendants on April 13, 2009. Although service had not yet been made upon him, Murphy (named as a defendant in the complaint) removed the case to federal court on June 1, 2009, more than thirty days after service upon each of his codefendants. All co-defendants agreed to the removal at that time.

Pursuant to 28 U.S.C. § 1446(b), a defendant may file notice to remove a case to the federal court:

within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is

based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

■ If there are multiple defendants in the case, the consent of all defendants is required for removal. *Chicago, R.I. & P. Ry. Co. v. Martin,* 178 U.S. 245, 248, 20 S.Ct. 854, 44 L.Ed. 1055 (1900). The statute is silent and the case-law is unsettled as to what happens if various defendants are served at different dates, and whether the thirty day period ought start at the time of service upon the first defendant (first-served defendant rule) or last defendant (last-served defendant rule).

■ Under the first-served defendant rule, once the first-served defendant fails to file the notice of removal during his thirty day period, he definitively forfeits his right to remove; he cannot restore it by joining the last-served defendant's removal. *Gorman v. Abbott Labs.,* 629 F.Supp. 1196, 1201 (D.R.I.1986) (Selya, J.) ("failure of a defendant to embark upon removal within the statutorily allotted time causes the right to perish. Such neglect cannot be cured retroactively by joining a subsequently-served defendant's removal pavane"); *see also Karpowicz v. Blue Cross & Blue Shield of Mass., Inc.,* 1996 WL 528372 at *7 (D.Mass.1996) (Wolf, J.) (following Judge Cyr's opinion in *Hill v. Phillips, Barratt, Kaiser Eng'g Ltd.,* 586 F.Supp. 944 (D.Me.1984) (holding that notice outside thirty day period applicable to the first-served defendant was untimely, and that the last-served defendant, who

was served ten days before the thirty day period applicable to first-served defendant expired, should have filed notice of removal within that ten day period)).

This approach focuses on the fixed and finite period of thirty days afforded to the first-served defendant. It is thus argued that permitting the first-served defendant to agree to a notice of removal outside his thirty day period runs against the strict interpretation of the statute. *See Davidson v. Rand,* 2005 WL 768593 at *4 (D.N.H.2005) (applying the first-served rule because "the removal statutes are strictly construed against removal") (citing *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108–09, 61 S.Ct. 868, 85 L.Ed. 1214 (1941)).[2]

■ Under the last-served defendant rule the thirty day period applies to the last-served defendant. Thus, during his thirty days, the last-served defendant can exercise his right to file the notice, regardless of the prior inactivity of his codefendants. The focus here is on protecting each defendant's right to remove, a right that would be nullified through no fault of their own, were the first-served defendant rule to be applied. In *Bailey v. Janssen Pharmaceutica, Inc.,* 536 F.3d 1202, 1205 (11th Cir.2008), the Eleventh Circuit concluded that "common sense and consideration of equity favor the last-defendant rule." The Sixth Circuit also follows the last-served defendant rule, *Brierly v. Alusuisse Flexible Packaging Inc.,* 184 F.3d 527, 532 (6th Cir.1999), stating that it was not the Congressional intention to afford the thirty day period for removal only to the first-served defendant.

---

**2.** The Plaintiffs also point to *Montana v. Abbot Labs. et al.,* 266 F.Supp.2d 250, 261 (D.Mass. 2003) (Saris, J.) (quoting *Russell Corp. v. American Home Assurance Co.,* 264 F.3d 1040, 1050 (11th Cir.2001) ("all uncertainties as to removal jurisdiction are to be resolved in favor of remand")). In a later decision, however, the Eleventh Circuit endorsed the last-served rule. *Bailey v. Janssen Pharmaceutica, Inc.,* 536 F.3d 1202, 1205 (11th Cir. 2008).

Since *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 353–354, 119 S.Ct. 1322, 143 L.Ed.2d 448,(1999), the argument for strict construction against removal has weakened. In that case, the Supreme Court held that even though the defendant received a faxed copy of a complaint, the formal summons was the "sine qua non" to start the thirty day period to file the notice of removal.

In *Egan v. Bechtel Corp.,* 2004 WL 2634411 at *1 (D.Mass.2004) (Stearns, J.), the court predicted that in light of *Murphy,* the Supreme Court would abandon the strict view for the emerging view that holds that fairness requires that later-served defendants also be given thirty days from the date of service to file a notice of removal (so long as all of the earlier-served non-filing co-defendants consent) in order that their removal rights not be compromised.[3]

It seems, however, that even before relaxation in the *Murphy* case, the application of the last-served defendant rule was most appropriate. The analysis is simple and in accord with fairness, once it is noticed that the statute provides each defendant with the right to file the notice, i.e., the right to initiate removal proceeding and not the right to remove as such.[4] Consent to removal is not addressed in the statute; it is a creature of case-law. *See Chicago, R.I. & P. Ry. Co. v. Martin,* 178 U.S. at 248, 20 S.Ct. 854. It is crucial to distinguish the ability to file the notice and the ability to consent. The former ought be counted separately for each defendant, definitively expiring after thirty days from the date of service on that defendant. This means that each subsequently added defendant has an opportunity to file the notice during his thirty days. On the other hand, the ability to consent comes to life if any co-defendant properly commences removal and it is time limited in a different manner. If the notice was timely filed by the last-served defendant, but after the statutory thirty day period applicable to the first-served defendant expired, the first-served defendant may consent during the thirty day period applicable to the person who files the notice of removal. In *Dichiara v. RDM Technologies,* 2009 WL 1351640 (D.Mass.2009) (Gorton, J.), the court held that a later-served defendant had a thirty day period to join in the earlier notice filed by the first-served defendant during his thirty days. It appears that this thirty day period afforded to later-served defendant serves as a counterpart of the time period the later-served defendant would have to initiate removal, had it not been yet done by his co-defendant.

In the case before this Court, the last-served defendant filed his notice within his thirty day period, and during the same thirty day period secured the consent of the earlier-served defendants who failed to act on the matter during their statutory period. This was acceptable. Accordingly, the Plaintiffs' motion to remand was denied from the bench on July 23, 2009.

**B. The Defendants' motion to dismiss**

1. Standard of review

This Court "take[s] specific facts affirmatively alleged by plaintiff as true

---

**3.** The same prediction was made by the Eighth Circuit in *Marano Enterprises of Kansas v. Z–Teca Restaurants, L.P.,* 254 F.3d 753, 756 (8th Cir.2001).

**4.** These two conflate if there is one defendant, because timely filing of the notice is all that is required to remove the case. If there are multiple defendants, however, the fact that the timely notice was filed by one of them does not guarantee removal because the consent of all other defendants is required.

(whether or not disputed) and construe[s] them in the light most congenial to the plaintiff's jurisdictional claim." *Cepeda v. Kass,* 62 Mass.App.Ct. 732, 737–38, 819 N.E.2d 979 (2004) (citing *Massachusetts Sch. of Law at Andover, Inc. v. American Bar Ass'n,* 142 F.3d 26, 34 (1st Cir.1998)).

### 2. When jurisdiction exists

■ "In Massachusetts, a court may exercise personal jurisdiction over a foreign defendant if such jurisdiction is authorized by state statute or rule and its exercise does not offend due process." *United Elec. v. 163 Pleasant St.,* 960 F.2d 1080, 1088 (1st Cir.1992); *Good Hope Indus. Inc. v. Ryder Scott Co.,* 378 Mass. 1, 5–6, 389 N.E.2d 76 (1979).

### 3. Long-arm statute

■ The Massachusetts long-arm statute extends personal jurisdiction in accordance with its terms as far as the United States Constitution permits. *Ross v. Ross,* 371 Mass. 439, 441, 358 N.E.2d 437 (1976) (Wilkins, C.J.). Naturally, its reach may extend no further. The statute provides: "a court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's transacting any business in this commonwealth." Mass. Gen. Laws ch. 223A, § 3(a).

#### a. Transacting business

■ The notion of transacting business is broadly construed and easy to satisfy. *United Elec.,* 960 F.2d at 1087. A defendant's physical presence in the Commonwealth is not necessary to "transact business" in Massachusetts, rather it is the defendant's "attempt to participate in

the Commonwealth's economic life" that counts. *Id.* However, the "Defendant's awareness of the location of the plaintiff is not, on its own, enough to create personal jurisdiction over a defendant." *Phillips v. Prairie Eye Ctr.,* 530 F.3d 22, 28 (1st Cir.2008). While it is not true that any communication sent into Massachusetts is sufficient to establish personal jurisdiction, *M–R Logistics, LLC v. Riverside Rail, LLC,* 537 F.Supp.2d 269, 275 (D.Mass. 2008) (Saylor, J.), just a few such acts may satisfy the long-arm statute. *See Workgroup Tech. Corp. v. MGM Grand Hotel, LLC,* 246 F.Supp.2d 102, 110 (D.Mass.2003) (Collings, M.J.). Typically, "the focus is on the contacts relating to the formation of the contract; these contacts ordinarily must be instrumental to its formation to establish jurisdiction." *M–R Logistics,* 537 F.Supp.2d at 275. "[E]xtensive post contract communications that relate to the operation of the contract itself" may be also deemed transacting business. *Id.* at 276.

■ Dressel had various communications with Moore with regard to the terms of the investment in Summerdale I, and various communications with Arrighi with regard to the terms of the investment in Summerdale II. Moreover, they had previously negotiated and concluded a syndication agreement which outlined the general terms of proposed investment in Summerdale II. These contacts were instrumental to the later creation of the contracts. This suffices to show Dressel's "attempt to participate in the Commonwealth's economic life"; his contacts thus constitute "transacting business." [5]

---

5. The Court notes, however, that, contrary to the Plaintiffs' assertion, the post-contract contacts in this case were not so extensive as to rise to the level of "transacting business" in Massachusetts. In *M–R Logistics,* the court

concluded that the out of state defendant's daily contacts with the plaintiff in Massachusetts sufficed to establish the "transacting business" prong of the long arm statute. *M–*

#### b. Agency

The Massachusetts long-arm statute reaches a principal who transacts business through an agent. The Defendants argue that Dressel did not act on behalf of all the other defendants. Defs. Reply [Doc. 19] at 4.

Although the Plaintiffs do not develop this issue, it appears that they rely on the existence of apparent agency between Dressel and the other defendants. The Plaintiffs do not point to any specific documents or other indicia of authority that support the assertion that Arrighi reasonably understood Dressel was the others' agent. The fact, however, that at the end of negotiations the contract was executed by all the Defendants shows an adequate relationship between Dressel and the other defendants. Similarly, because Dressel himself was a guarantor, it is more likely than not that he acted in his personal capacity as well. Since the Court construes facts alleged by the Plaintiffs in the light most congenial to them, all the Defendants are held to be transacting business in Massachusetts though their agent Dressel.

#### c. "Arising from" requirement

The long-arm statute also requires that the claim arise from the business transacted in Massachusetts. The "arising from" requirement is met "when the cause of action is for an alleged breach of contract and the business transacted was instrumental in the formation of the contract." *Hahn v. Vermont Law Sch.,* 698 F.2d 48, 51 (1st Cir.1983). The Plaintiffs' claim here is based on breach of the contract that was created through negotiations that involved the out of state parties transacting business in Massachusetts, and therefore this element is satisfied.

*R Logistics,* 537 F.Supp.2d at 275. This is not

Because all of the long-arm statute's requirements are met, the Court turns to the Due Process analysis.

#### 4. Due process

Whether the exercise of jurisdiction is consistent with the constitutional right to due process is determined by a three part test:

First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

*United Elec.,* 960 F.2d at 1089.

#### a. Relatedness

When analyzing relatedness, the court's inquiry is whether a "nexus between the defendant's contacts [with Massachusetts] and the plaintiff's cause of action" exists. *Fairview Mach. & Tool Co. Inc. v. Oakbrook Int'l, Inc.,* 56 F.Supp.2d 134, 139 (D.Mass.1999) (Ponsor, J.). Here, the Defendants' contacts with Massachusetts amount to multiple calls and correspondence before and after the agreement, and the Plaintiffs' cause of action is for a breach of that same agreement. This satisfies the relatedness inquiry.

#### b. Purposeful availment

The court must determine that the Defendants' contacts with Massachusetts are not "random, isolated, or fortuitous." *Nowak v. Tak How Invs., Ltd.,* 94 F.3d 708, 716 (1st Cir.1996). This prong is the case here.

only satisfied when the defendant "purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on these contacts." *Id.* The two focal points are voluntariness and foreseeability. *Ticketmaster–N.Y., Inc. v. Alioto,* 26 F.3d 201, 207–208 (1st Cir.1994). "The defendant's contacts with the forum state must be voluntary, that is, not based on the unilateral actions of another party or a third person." *Id.* (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). Moreover, the Defendant's contacts with the forum state must in addition be such that he should reasonably anticipate being haled into court there. *Id.* (citing *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). In *Burger King Corp.,* the Supreme Court stated:

> Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a "substantial connection" with the forum State. *McGee v. International Life Insurance Co.,* 355 U.S. 220, 223, 78 S.Ct. [199, 2 L.Ed.2d 223] (1957); *see also Kulko v. California Superior Court,* 436 U.S. 84, 94 n. 7, 98 S.Ct. [1690, 56 L.Ed.2d 132] (1978). Thus where the defendant "deliberately" has engaged in significant activities within a State, *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 781 104 S.Ct. [1473, 79 L.Ed.2d 790] (1984), or has created "continuing obligations" between himself and residents of the forum, *Travelers Health Assn. v. Virginia,* 339 U.S. 643, 648, 70 S.Ct. [927, 94 L.Ed. 1154] (1950) he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Burger King Corp.,* 471 U.S. at 475–76, 105 S.Ct. 2174 (internal citations modified; footnote omitted).

The Defendants argue that they never sought or contemplated the benefits or burdens of Massachusetts law. Dismiss Mem. at 6. They also assert that the jurisdiction of Massachusetts courts was not foreseeable because all of the contracts at issue provide for their construction and enforcement in accordance with the laws of the State of Georgia. In *Burger King Corp.,* the Supreme Court concluded that a choice-of-law provision in a contract that specifies the forum state "reinforce[s] [the nonresident defendant's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there." *Burger King Corp.,* 471 U.S. at 482, 105 S.Ct. 2174. Similarly in *Her–Vill Group Corp. v. Netser Computer Intern.,* 2007 WL 120770, at *7 (D.P.R.2007) (citing *Burger King Corp.,* 471 U.S. at 482, 105 S.Ct. 2174), the court stated that acceptance of a forum state choice of law provision in the contract weighs in favor of a finding that the purposeful availment prong is satisfied.

 Here in contrast, the parties' agreement to Georgia law runs against the conclusion that the Defendants purposefully availed themselves of Massachusetts law. Moreover, contacts that satisfy the "transacting business" element of the Massachusetts long arm statute do not necessarily constitute purposeful availment. In *Bond Leather Co. v. Q.T. Shoe Mfg. Co.,* 764 F.2d 928 (1st Cir.1985), the court held that while a defendant's mailing four letters to and receiving a telephone call from the plaintiff in Massachusetts constituted "transacting business," these contacts did

not satisfy purposeful availment. *Bond Leather Co.*, 764 F.2d at 933–35.

This case is similar. The Plaintiffs, looking for investment opportunities, sought out the Defendants in Georgia. The Massachusetts end of the bargain is that most rootless and fungible of commodities—money. The parties agreed that the governing law is to be the law of Georgia. The Defendants' contacts with Massachusetts are limited to the communications, written and oral, instrumental to the creation of the contracts, and making reports thereunder. These circumstances are simply insufficient to satisfy the purposeful availment requirement.[6] Further analysis of the due process test is, therefore, not needed.

In sum, the Massachusetts long-arm statute authorizes jurisdiction over the Defendants; however, because of want of purposeful availment, its exercise offends due process. Therefore, the Defendants' motion to dismiss for lack of personal jurisdiction must be granted.

## III. CONCLUSION

Accordingly, the Plaintiffs' motion to remand [Doc. 8], must be, and on July 23, 2009, was denied. The Defendants' motion to dismiss for lack of personal jurisdiction [Doc. 4] is granted.[7]

SO ORDERED.

---

6. This Court acknowledges that recently, upon virtually identical facts, a distinguished Justice of the Massachusetts Superior Court reached precisely the opposite conclusion. *C & M Management, Inc. v. Cunningham–Warren Properties, LLC.*, Suffolk Super. Ct. No. 08–0493, Memorandum of Dec. at 6–7 (July 29, 2009)(Henry, J.) While this Court completely agrees with its analysis of Massachusetts law (indeed I may well be controlled by it), with utmost respect I consider that "purposeful availment" requires something more.

7. While the Court would normally transfer this action to the appropriate federal district court in Georgia pursuant to 28 U.S.C. § 1404(a), the Plaintiffs never sought a federal forum and do not, even in the alternative, request this outcome. Dismissal is thus appropriate.